UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00568-RGJ

**TYRIAN C.**  PLAINTIFF

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*  DEFENDANT

## REPORT AND RECOMMENDATION

The Commissioner of Social Security denied Tyrian C.'s[1] ("Claimant's") applications for disability insurance benefits and supplemental security income benefits. Claimant presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Both Claimant (DN 19; DN 20) and the Commissioner (DN 22) have filed a Fact and Law Summary. The District Judge referred this case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 14).

### I. Background

Claimant applied for supplemental security income benefits and disability insurance benefits on July 29, 2019. (Transcript, hereinafter "Tr.", 193-206). In both applications, Claimant alleged disability beginning on February 7, 2018, due to mental issues, anxiety, panic attacks, major depression, and high blood pressure. (Tr. 263). The Social Security Administration denied her applications initially (Tr. 66-93) and again on reconsideration (Tr. 94-109).

---

[1] Pursuant to the Western District of Kentucky's General Order No. 22-05, any non-government party in a 42 U.S.C. 405(g) case will be identified and referenced solely by first name and last initial in opinions issued.

At Claimant's request, Administrative Law Judge John R. Price ("ALJ Price") conducted a hearing in Louisville, Kentucky, on September 9, 2020. (Tr. 36-38). With Claimant's consent, the hearing was conducted telephonically because of the COVID-19 pandemic. (Tr. 38). Claimant, her attorney, and an impartial vocational expert participated in the telephonic hearing. (*Id.*).

During the hearing, Claimant testified to the following. Claimant has a long history of anxiety. (Tr. 44). But in 2015, after her mother passed away, her anxiety worsened, and Claimant could no longer drive or "function." (Tr. 45). Her house was foreclosed upon, and she was homeless for a period. (Tr. 47). Eventually, Claimant started staying with her niece, secured a job as a medical receptionist, and took a taxi to work. (Tr. 40-41, 47-48). By April of 2017, Claimant stopped working because her anxiety and panic attacks caused her to miss work too often. (Tr. 40-41, 59). She currently lives in an efficiency apartment and receives HUD assistance. (Tr. 49). Claimant's sister gives her a money order every month and takes her to get groceries since Claimant has trouble handling crowds. (*Id.*).

Physically, Claimant deals with breathing problems, requiring an inhaler, and high blood pressure. (Tr. 50-51). Her medications allegedly make her lightheaded and dizzy. (Tr. 56). As to her panic attacks, Claimant says they are scary because she can't breathe and they "almost make[ her] feel like [she's] going to die." (Tr. 58). Though she concedes to having some good days, she claims to have bad days for seventy-five percent of the month. (Tr. 58-59). On bad days, Claimant feels numb and stays in bed all day. (Tr. 59). Though counseling has been recommended to her on several occasions, Claimant has not followed through. (Tr. 55).

ALJ Price issued an unfavorable decision on September 24, 2020. He applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has

not engaged in substantial gainful activity since February 7, 2018, her alleged onset date. (Tr. 17). Second, Claimant has the following severe impairments: major depression and anxiety. (*Id.*). Third, none of Claimant's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 18). Between the third and fourth steps, ALJ Price found Claimant has the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels" with the following non-exertional limitations:

> The claimant is able to perform simple routine tasks for work with little to no requirement for independent judgment and little to no change in the work routine from day to day; the claimant is able to have occasional superficial interaction with supervisors and co-workers but should avoid the general public; the claimant should avoid exposure to hazards, such as unprotected heights and dangerous moving machinery, and should avoid exposure to concentrated dust, gas, fumes, and other pulmonary irritants.

(Tr. 21). Fourth, Claimant is unable to perform any past relevant work. (Tr. 29). Fifth and finally, after considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy she can perform. (*Id.*). Based on this evaluation, ALJ Price concluded Claimant has not been under a disability, as defined in the Social Security Act, since her alleged onset date of February 7, 2018 through the date of his decision. (Tr. 30).

Claimant administratively appealed ALJ Price's decision. (Tr. 190-91). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Price's decision. (Tr. 5). At that point, ALJ Price's denial become the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v.*

*Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant submits four claims of error from ALJ Price's decision. First, Claimant asserts ALJ Price erred by failing to properly evaluate her agoraphobia. Her next two claims relate to ALJ Price's evaluation of Consultative Examiner Dr. Fishkoff's opinion. Claimant states ALJ Price did

not properly evaluate the supportability and consistency of Dr. Fishkoff's opinion and failed to incorporate Dr. Fishkoff's finding that Claimant had mild to moderate ability to maintain employment. Finally, Claimant believes ALJ Price erred by failing to adequately connect the facts of the case with the environmental limitations in his RFC determination.

### A. ALJ Price's Evaluation of Claimant's Agoraphobia

Claimant argues ALJ Price erred by failing to discuss her agoraphobia diagnosis anywhere in his decision. (DN 20, at PageID # 476-79). Claimant points to evidence in the record she believes establishes her agoraphobia is a severe impairment affecting her ability to work, including her own reports that she only leaves her house to attend medical appointments and her decision not to attend the funerals of several family members. (*Id.* at PageID # 478). Additionally, Claimant submits that her anxiety-related panic attacks from being around other people or being outside of her comfort zone are consistent with agoraphobia. (*Id.*). Based on this evidence, Claimant asserts ALJ Price should have considered whether her agoraphobia was a medically determinable impairment at Step Two and, relatedly, how her agoraphobia would have impacted her ability to maintain employment in the RFC determination. (*Id.* at PageID # 478-79).

The Commissioner responds ALJ Price did, in fact, consider Claimant's agoraphobia by acknowledging her treating physician's determination that her shortness of breath was likely multifactorial and involved the effects of deconditioning associated with agoraphobia and a sedentary activity level with staying at home. (DN 22, at PageID # 492). The Commissioner further highlights how ALJ Price considered that Claimant did not attend four of her family members' funerals. (*Id.*). Despite this evidence, the Commissioner asserts ALJ Price appropriately considered evidence contradicting Claimant's alleged agoraphobia, namely that she shops in stores for food weekly, has at least one good friendship, and has fair relationships with her adult son and adult

niece, with whom she was living. (*Id.*). The Commissioner concludes that although ALJ Price did not explicitly consider agoraphobia as a medically determinably impairment, he did so within his consideration of Claimant's depression, anxiety, and panic attacks and, accordingly, limited Claimant to superficial interaction with supervisors and coworkers and to no interaction with the public. (*Id.* at PageID # 492-93).

At Step Two of the sequential evaluation process, ALJs determine whether a claimant's medically determinable impairments are severe or non-severe. A "medically determinable impairment" is one resulting from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques . . .[including] by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. Step Two of the evaluation process is generally considered a "de minimis hurdle;" that is, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  Where an ALJ finds at least one severe impairment, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003); *see also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (where the ALJ found that claimant had severe impairment, "[t]he fact that some of the [claimant's] impairments were not deemed to be severe at step two is [] legally irrelevant.").

In his Step Two analysis, ALJ Price only mentioned agoraphobia in the context of discussing Claimant's hypertension and shortness of breath. Specifically, ALJ Price noted Dr. Koch's determination that Claimant's shortness of breath was likely "multifactorial," involving the effects of deconditioning associated with agoraphobia and a sedentary activity level with

6

staying at home. (Tr. 17). But no error resulted from ALJ Price not evaluating Claimant's agoraphobia as a medically determinable impairment at Step Two. First, so long as an ALJ finds a claimant suffers from at least one severe impairment at Step Two, he must continue with the remaining steps in the disability evaluation and may then properly consider additional conditions in determining whether the claimant retained sufficient residual functional capacity to allow the claimant to perform substantial gainful activity. *See Maziarz v. Sec'y Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). ALJ Price found Claimant had the severe impairments of major depression and anxiety and, therefore, continued with the remaining steps of the disability evaluation. (Tr. 17). Accordingly, ALJ Price not discussing Claimant's agoraphobia at Step Two is not reversible error.

Also counseling against a finding of error at Step Two is Claimant's failure to identify her alleged agoraphobia diagnoses. To support that she has been "diagnosed with agoraphobia," Claimant cites to two pages of records from her March 20, 2019 visit with Dr. Jennifer Koch. (DN 20, at PageID # 477 (citing Tr. 374, 377). Dr. Koch mentioned agoraphobia several times on these two pages. In the "History of Present Illness" section, Dr. Koch stated Claimant has a "history of generalized anxiety disorder with panic attacks and agoraphobia, depression, hypertension, and dyspnea/wheezing . . . ." (Tr. 374). Dr. Koch also mentioned Claimant's report that she had four recent deaths in the family but did not attend the funerals due to anxiety and agoraphobia and that "[s]he does not typically leave the house unless it's to come to an appointment." (*Id.*). Several pages later in the "Discussion/Summary" portion of the record, Dr. Koch again mentioned Claimant's history of generalized anxiety disorder with panic attacks and agoraphobia and further noted Claimant had "[n]o recent panic attacks but continues to stay home due to agoraphobia . . . ." (Tr. 377). However, there was no mention of agoraphobia as a diagnosis in either the

"Assessment" section or "Plan" section of Dr. Koch's record. (Tr. 376). Nor has Claimant identified any other piece of evidence supporting this diagnosis, as is her obligation under the regulations.[2]

Regardless, ALJ Price considered information relating to Claimant's agoraphobia in his RFC determination. He recounted Claimant's subjective complaints that she has trouble interacting with other tenants in her apartment building, that she cannot handle crowds or people generally, that she avoids going outdoors, and that she often wears ear plugs when out in public. (Tr. 22). ALJ Price further mentioned Claimant's report to Dr. Koch that she did not attend the funerals of several family members due to anxiety and agoraphobia and her reports to Dr. Milam that she was not leaving her home except for walks on rare occasions and sometimes going to the laundromat. (Tr. 24). Considering this information, along with the rest of Claimant's record, ALJ Price limited Claimant to occasional superficial interaction with supervisors and coworkers and avoiding the general public, both of which account for Claimant's complaints of agoraphobia. Because Claimant does not tie the limited evidence related to her agoraphobia to further restrictions that should have been included in the RFC, the Court again finds no error. No relief is recommended on this claim.

### B. ALJ Price's Evaluation of Dr. Fishkoff's Opinion

Turning to the RFC determination, Claimant takes issue with ALJ Price's evaluation of Dr. Fishkoff's medical opinion. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a

---

[2] Additionally, the Disability Report that Claimant submitted with her application asked her to list "all of the physical and mental conditions (including emotional or learning problems) that limit [her] ability to work." (Tr. 263). Claimant identified "1. Mental Issues 2. Anxiety 3. Panic Attacks 4. Major Depression 5. High Blood Pressure" but did not list agoraphobia. (*Id.*).

claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

In this case, the new regulations for evaluating medical opinion evidence apply because Claimant filed her applications for supplemental security income benefits and disability insurance benefits after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id.* ALJs now evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination. *Id.* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.* In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* (c)(2).

On November 1, 2018, Claimant underwent a consultative examination with Dr. Jennifer Fishkoff, Psy.D. (Tr. 359-64). Dr. Fishkoff observed Claimant's mood as anxious and depressed,

noting that she cried off and on during the examination. Dr. Fishkoff additionally noted Claimant's "noticeable social withdrawal" and depressed facial expressions. (Tr. 360). Despite this presentation, Dr. Fishkoff noted Claimant's "thoughts and speech were sequential, goal directed, clear, and coherent" and, based on testing, that Claimant has an average fund of information, average abstract reasoning abilities, and average judgment. (Tr. 361-62).

Based on her examination, Dr. Fishkoff diagnosed Claimant with panic disorder, unspecified depressive disorder, and hypertension but concluded her prognosis was fair and would likely improve with short-term mental health treatment. (Tr. 363). Dr. Fishkoff further opined that Claimant's abilities to tolerate frustration and conform to social standards, as well as maintain employment, are mildly to moderately impaired; her ability to understand, retain, and follow instructions is mildly impaired; and her ability to sustain attention to perform simple repetitive tasks is mildly impaired. (Tr. 364). Dr. Fishkoff concluded that "given compliance with mental health treatment, [Claimant] does appear to be capable of tolerating the stress and pressures associated with day-to-day work activity." (*Id.*).

ALJ Price found Dr. Fishkoff's opinion "generally persuasive" because it was "generally consistent with the objective findings and assessment described in the report of her examination and with the weight of the total medical and other evidence received at the hearing level viewed from a longitudinal perspective." (Tr. 28). ALJ Price highlighted Dr. Fishkoff's finding of only mild to moderate limitation in Claimant's ability to tolerate frustration and conform to social standards and mild limitation in her ability to understand, retain and follow instructions and sustain attention to simple and repetitive tasks. (*Id.*). ALJ Price also emphasized Dr. Fishkoff's determination that with compliance with mental health treatment, Claimant appeared capable of tolerating the stress and pressures associated with day-to-day work activity and that she would

10

likely improve with short-term mental health treatment. (*Id.*). But ALJ Price noted that the more recent opinions of Dr. McNeal and Dr. Sillers were even more consistent with the evidence at the time of their reviews. (*Id.*).

Claimant sees two problems with ALJ Price's analysis of Dr. Fishkoff's opinion. First, Claimant asserts ALJ Price did not properly evaluate the supportability and consistency of Dr. Fishkoff's opinion. Second, Claimant takes issue with ALJ Price's failure to incorporate Dr. Fishkoff's finding that Claimant had mild to moderate ability to maintain employment. Neither challenge is successful.

As to the consistency and supportability of Dr. Fishkoff's opinion, ALJ Price clearly considered both factors in his analysis. He noted that Dr. Fishkoff's opined limitations were internally consistent with her findings on objective exam. He further identified that Dr. Fishkoff's opined limitations were supported by the totality of record evidence from a longitudinal perspective. Though ALJ Price did not follow this analysis with specific examples of the opinion's supportability and consistency, he did so elsewhere in his RFC determination. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that the ALJ's analysis may be found throughout the decision). For instance, ALJ Price had previously described Dr. Fishkoff's observations of Claimant during the examination (Tr. 23) and had exhaustively outlined Claimant's limited medical records (Tr. 23-25).[3] ALJ Price's analysis complies with the regulations.

Claimant also believes it was contradictory for ALJ Price to find Dr. Fishkoff's opinion "generally persuasive" but then fail to incorporate Dr. Fishkoff's finding that Claimant's ability "to maintain employment is mild to moderately impaired" in his RFC. (DN 20, at PageID # 471-

---

[3] Approximately forty pages of medical records constitute Claimant's entire treating history.

72). Claimant asserts Dr. Fishkoff's limitation is consistent with medical records of her panic attacks and agoraphobia and is supported by Dr. Fishkoff's own observations during the examination that Claimant was "quite anxious and depressed" and was crying off and on. (*Id.*). Because ALJ Price did not address this limitation and assess its consistency and supportability, Claimant maintains his analysis was reversible error.

The Court disagrees. Although ALJ Price found Dr. Fishkoff's opinion "generally persuasive," he noted the State Agency Physicians Drs. McNeal and Sillers' opinions were "more consistent" as they were more recent and included additional evidence of record. (Tr. 28). Drs. McNeal and Sillers did not find Claimant's mild to moderate limitations in maintaining employment were disabling. (Tr. 75, 104). After reviewing Dr. Fishkoff's opinion, the other opinion evidence, and objective medical records, Drs. McNeal and Sillers concluded Claimant could: understand and remember simple instructions and procedures requiring brief learning periods; usually 30 days or less; sustain attention, concentration, effort and pace for simple tasks requiring little independent judgment and involving minimal variations over 2-hour work segments with normal breaks; interact with coworkers and supervisors for task completion in a work environment that offers no contact with the public; and adapt to situational conditions and normal changes in routine hazards in the work place (Tr. 75, 104). The ALJ largely adopted Drs. McNeal and Sillers' conclusions as to Claimant's limitations but additionally found Claimant could interact only occasionally with supervisors and coworkers. (Tr. 21, 75, 104).

Even when an ALJ finds an opinion to be persuasive, he is not required to adopt its limitations verbatim. *Bryson v. Comm'r of Soc. Sec.*, No. 3:20-CV-667-CHB, 2022 WL 945318, at *4 (W.D. Ky. Mar. 29, 2022) (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (add'l citation omitted)). And there is no requirement that an ALJ discuss each

limitation from an opinion that he adopts, or fails to adopt, when he has rejected or adopted the opinion on broader grounds. *See, e.g., Williams v. Comm'r of Soc. Sec.*, No. 1:20-cv-11567, 2021 WL 3524115, at *5 (E.D. Mich. June 23, 2021) (rejecting argument that ALJ should have individually evaluated each limitation in a medical opinion because ALJ indirectly did so by finding the opinion persuasive based on its consistency with the evidence as a whole); *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-cv-1291, 2021 WL 1697919, at *8 (N.D. Ohio, Apr. 29, 2021) ("An ALJ isn't required to discuss each limitation from an opinion (or opinions) that he rejects on broader grounds.") (citations omitted)). This means ALJ Price did not err by not explicitly discussing the supportability or consistency of one limitation in Dr. Fishkoff's opinion.

Additionally, if any doubt existed as to whether ALJ Price considered Dr. Fishkoff's finding of mild to moderate limitation in maintaining employment, it was resolved by his analysis of Drs. McNeal and Sillers' more recent and more consistent opinions. ALJ Price largely adopted Drs. McNeal and Sillers' opinions in forming his RFC determination, including their findings regarding Claimant's ability to maintain employment. For all of these reasons, ALJ Price's conclusion that Dr. Fishkoff's opinion was generally persuasive is supported by substantial evidence in the record and complies with the pertinent regulations.

C. ALJ Price's Assignment of Environmental Limitations

The previous claims bleed into Claimant's final issue with ALJ Price's RFC determination - that he did not build an accurate and logical bridge between the facts of the case and Claimant's environmental limitations. Claimant specifically takes issue with ALJ Price's finding that Plaintiff should avoid exposure to concentrated dust, gas, fumes and other pulmonary irritants to "account for her reports of problems with episodes of shortness of air and elevated blood pressure." (DN 20, at PageID # 479-81 (quoting Tr. 26)). According to Claimant, her breathing problems are not

related to pulmonary irritants but are related to her agoraphobia and panic attacks. (*Id.* at PageID # 481). In support, Claimant cites to her treating physician's finding that her shortness of breath is "multifactorial" and involves the effects of deconditioning associated with agoraphobia. (*Id.* at PageID # 481 (citing Tr. 17)). Because ALJ Price incorrectly attributed her breathing issues to pulmonary irritants, Claimant argues he did not logically connect this environmental limitation to her breathing problems, resulting in reversible error. (*Id.* at PageID # 481-82). Relatedly, Claimant asserts ALJ Price impermissibly played doctor and made his own medical conclusions by limiting the Claimant's exposure to pulmonary irritants to account for her breathing problems. (*Id.* at PageID # 482).

The Commissioner responds that Claimant omits portions of her treating physician's statement that support ALJ Price's environmental limitations, namely that Claimant has lung issues related to her extensive smoking history. (DN 22, at PageID # 495-96). The Commissioner also maintains ALJ Price did not inappropriately play doctor but instead weighed the evidence and gave Claimant the benefit of the doubt by including environmental limitations relating to her reports of problems with shortness of breath. (*Id.* at PageID # 497). Any error in ALJ Price's assignment of environmental limitations, per the Commissioner, was harmless because it actually benefited Claimant. (*Id.*).

ALJs are required to "provide an accurate and logical bridge between the evidence and the conclusion[,]" but are not required to explicitly mention or discuss every piece of evidence in the record. *Logsdon v. Kijakazi*, No. 1:20-CV-00177-GNS, 2022 WL 812416, at *5 (W.D. Ky. Mar. 16, 2022) (quoting *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (add'l citations omitted)). Stated otherwise, the ALJ must "articulate with specificity reasons for the findings and conclusions that he or she makes[.]" *Rhodes v. Berryhill*, No. 3:17-

14

cv-167-RGJ-CHL, 2019 WL 5712571, at *3 (W.D. Ky. Nov. 5, 2019) (quoting *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999)).

ALJ Price created a logical bridge between the evidence of record and his conclusion that Claimant should avoid exposure to concentrated dust, gas, fumes, and other pulmonary irritants. After discussing Claimant's "limited, routine, conservative, and sporadic" mental health treatment, ALJ Price indicated that Claimant's subjective allegations of becoming severely short of breath with little exertion and inability to walk 2-3 blocks were not well corroborated. (Tr. 26). Despite this conclusion, ALJ Price gave Claimant "the benefit of the doubt" by including "some environmental limitations restricting her exposure to pulmonary irritants and to hazards to account for her problems with episodes of shortness of air and elevated blood pressure, which [Claimant] testified may be related to her anxiety rather than to any specific physical impairment." (Tr. 26).

The fact that ALJ Price did not mention a record from Claimant's treating physician, Dr. Koch, in forming this conclusion does not render the environmental limitations unsupported. Claimant merely cherry-picks evidence from Dr. Koch's March 20, 2019 treatment record to claim her shortness of breath was caused by her agoraphobia and anxiety. In fact, Dr. Koch assessed Claimant's dyspnea and wheezing and found these conditions were "likely multifactorial as patient is deconditioned (has agoraphobia which keeps her at home, sedentary) and likely has underlying lung disease due to extensive smoking history (1 ppd x 30 years)." (Tr. 377). This record further reveals that Dr. Koch counseled Claimant on the importance of quitting smoking. (Tr. 378). Though ALJ Price did not specifically cite to this record in his RFC determination, in limiting Claimant's exposure to pulmonary irritants, ALJ Price specifically considered Claimant's subjective claim that her shortness of breath was caused by anxiety. The Court agrees with the Commissioner that ALJ Price's environmental limitation ultimately benefited Claimant and cannot

15

constitute error. Moreover, ALJ Price adequately accounted for issues stemming from Claimant's anxiety and panic attacks in separate RFC restrictions, including claimant having only occasional interaction with supervisors and coworkers, avoiding the general public, and having little to no change in the work routine from day to day. (Tr. 21).

And while Claimant is correct that an ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings," *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009), ALJ Price did not make independent medical findings here. He considered the evidence of record, found Claimant's complaints regarding shortness of breath were unsubstantiated, regardless of their alleged genesis, and limited Claimant's exposure to pulmonary irritants in an effort to give her the benefit of the doubt. Based on this analysis, the Court finds ALJ Price articulated with specificity the reasoning behind the environmental limitations in his RFC, and his conclusion is supported by substantial evidence in the record.

## IV. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

Regina S. Edwards, Magistrate Judge
United States District Court

January 3, 2023

## NOTICE

Therefore, under the provisions of 28 U.S.C. " 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:    Counsel